IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:19-cv-145 |
| ) | |
| 9.89 ACRES OF LAND AND 0.33 ACRES ) | By: Elizabeth K. Dillon |
| OF LAND, OWNED BY ELIZABETH LEE ) | United States District Judge |
| TERRY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire permanent and temporary easements on numerous properties, including two properties located in Roanoke County and owned by Elizabeth Terry. On March 7, 2018, the court entered orders in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, Case No. 7:17-cv-492 (W.D. Va.) (Dkt. Nos. 596, 604), granting MVP immediate possession of the easements on these properties.

On March 31, 2021, the court issued an opinion and order granting summary judgment to MVP as to the amount of just compensation for one of the parcels of land at issue in this case, MVP Parcel No. VA-RO-5228. (Dkt. Nos. 75, 76.) The court also took under advisement various motions related to the other parcel in this case, MVP Parcel No. VA-RO-054: MVP's motion to exclude expert testimony (Dkt. No. 20) and MVP's motion in limine (Dkt. No. 22) to the extent it sought to exclude evidence of a conceptual subdivision.[1]  Subsequently, the court held a hearing on defendants' motion to file supplemental memoranda regarding comparable sales and highest and

---

[1] At the hearing regarding these motions, the court also granted the motion to exclude testimony by defendant Elizabeth Terry (Dkt. No. 51) by agreement of counsel. (Dkt. No. 55.)

best use (Dkt. No. 61), defendant's motion for a jury view (Dkt. No. 64), and MVP's motion for trial by videoconference (Dkt. No. 57). These five motions are before the court for resolution. Trial of this matter is currently scheduled to begin August 11, 2022.

For the reasons stated below, MVP's motion to exclude experts will be granted, landowner's motion to file supplemental memoranda regarding comparable sales and highest and best use will be denied, MVP's motion in limine will be granted with respect to evidence of conceptual subdivision, landowner's motion for a jury view will be granted, and MVP's motion for a trial by videoconference will be denied without prejudice. Of course, with regard to the motion in limine, the court may revisit its ruling at trial, depending on the evidence elicited and the context in which the evidence is offered.

## I. BACKGROUND

On October 13, 2017, the Federal Energy Regulatory Commission (FERC) issued an order for MVP to construct, maintain, and operate a natural gas pipeline along a route that includes the Property (the Approved Route). On October 24, 2017, MVP filed an action to condemn easements along the Approved Route on the Property under Section 7 of the Natural Gas Act, 15 U.S.C. § 717f. On October 27, 2017, MVP moved for partial summary judgment that it is authorized to condemn the easements and a preliminary injunction granting immediate possession for construction. On January 31, 2018, the court issued a memorandum opinion and order granting MVP's motion for partial summary judgment and conditionally granting MVP's motion for immediate possession upon a determination of appropriate security. On March 7, 2018, the court set deposits and bonds for the Property and granted MVP immediate possession of the easements effective upon making the required deposit and posting the required bond.

Among the easements along the Approved Route, MVP is taking 0.33 acres of temporary

workspace on MVP Parcel No. VA-RO-5228, owned by defendant Elizabeth Terry. The total amount of land on VA-RO-5228 is 200 acres. As noted, the court granted MVP's motion for summary judgment as to the amount of just compensation for this taking, finding that just compensation for VA-RO-5228 is set in the amount of $528. (Dkt. No. 76.)

MVP is also taking 9.89 acres on MVP Parcel No. VA-RO-054, which includes 1.14 acres temporary access easement, 4.67 temporary workspace, 0.62 acres additional workspace easement, and 3.46 acres permanent easement. (Compl. ¶ 134.) Parcel No. VA-RO-054 is also owned by Ms. Terry. The total amount of land on VA-RO-054 is 160 acres. Parcel Nos. VA-RO-5228 and VA-RO-054 are non-contiguous.

## II. DISCUSSION

### A. Legal Standards

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance. Legal standards regarding the same are set forth herein.

**1. Just compensation for partial permanent takings, including severance damages**

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). When the government condemns private property for a public purpose, it must pay just compensation for that property. Just compensation is the monetary equivalent of the property taken, and the federal courts have employed the concept of "fair market value" to determine the condemnee's loss. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings. *United States v. Miller*, 317 U.S. 369, 379–80 (1942); *see also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act). The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the remainder." *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952)). Moreover, "value [of the condemned land] is to be ascertained as of the date of taking." *Miller*, 317 U.S. at 374.

In *W. Va. Pulp & Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." 200 F.2d at 102. The court recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken." *Id.* at 103. The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken." *Id.* at 104. *See also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking").

## 2. Damages for perceived market negative influences

In a previous opinion, this court analyzed the law with regard to testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *See Mountain Valley Pipeline, LLC v. 1.23 Acres of Land Owned by Eagle's Nest Ministries, Inc.*, Civil Action No. 7:18-cv-00610 (W.D. Va.), Dkt. No. 55; *Mountain Valley Pipeline, Inc. v. 6.50 Acres of Land Owned by Sizemore Inc. of Va.*, Civil Action No. 7:18-cv-00612 (W.D. Va.), Dkt. No. 66. The court will not repeat that entire analysis here, but merely incorporates it by reference. By way of summary, the court held that, to be admissible, an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property. In other words, there must be a causal link between the hazard inherent in the taking and a direct loss in the marketplace. *United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1448 (9th Cir. 1984); *see also Atl. Coast Pipeline LLC v. 0.07 Acres*, No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an expert environmental professional's opinion about a natural gas pipeline's effect on property value because the analysis was not linked to the specific property's value and was therefore irrelevant to the determination of just compensation).

## 3. Expert testimony

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise

> if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should occur only where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (alteration in original) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not

*ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Md. Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit." The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Md. Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

B. **MVP's Motion to Exclude Expert Testimony**

MVP moves to exclude testimony by defendants' expert witnesses: Dennis Gruelle, Sean Horne, Linda DeVito, and Larry Florin.

1. **Dennis Gruelle**

Gruelle, an appraiser, found that the difference in market value before and after the take was $327,000—109 acres x $7,500/AC before ($817,500), 109 acres x $4,500/AC after ($490,500). (Dkt. No. 21-2.) MVP argues that Gruelle's opinion of the value of the property after the taking should be excluded because two of the three comparable sales that he used are based on insufficient data for the sale comparison approach.

Sale 1 cannot be used, according to MVP, because it is an unencumbered sale. The property was conveyed to Venkat and Anitha Reddy on December 28, 2017. MVP was granted possession approximately nine weeks later on March 7, 2018. Defendant argues that the marketplace was aware of the project at this point, which was after MVP filed its complaint in October 2017. Even so, there is no evidence of the Reddys' awareness and Gruelle's analysis assumes that Sale 1 was an after sale, not a before sale. Therefore, Gruelle can only speculate that the project impacted the sales price.

MVP argues that Sale 2 also cannot be used because the buyer did not know the property was encumbered and both parties claim they are entitled to receive the just compensation that will be awarded for the taking of the property. Lenora Montouri conveyed the property to Venkat Reddy on April 26, 2018. Landowner insists that this sale was made with knowledge of the project. However, Reddy and his closing attorney maintain that they did not know that the property was being condemned at the time of recordation, and they have signed declarations stating as such.

8

(Dkt. Nos. 1247-1 at 11 of 24, 1283 at 2, Case No. 7:17-cv-492.) The seller, Montouri, at the time of the sale, signed an affidavit stating that there were no other parties in possession of her property. (Dkt. No. 1247-1 at 7 of 24.)

Because two of the three sales relied upon by Gruelle do not provide the value of a property encumbered by a pipeline easement, Gruelle's opinion is based on insufficient data and is unreliable. Thus, his opinion regarding the value of the property after the taking, and any opinion derived therefrom, must be excluded.

### 2. Sean Horne

Horne, a real estate developer, opined that the highest and best use of the subject property would be for residential subdivision, which is compromised by the pipeline project. (Dkt. No. 21-3.) MVP argues that the opinions by Horne (and Gruelle) on highest and best use should be excluded because the conceptual subdivision plan created by Horne, and relied upon by Gruelle, is not legally permitted under the applicable zoning ordinance in the absence of a network of public roads that does not exist. Roanoke County zoning requires frontage on a publicly owned and maintained road, and these experts assume without evidence that the roads necessary to support the subdivision will be publicly owned and maintained. *See United States v. 33.92356 Acres*, 585 F.3d 1, 7 (1st Cir. 2009) ("If a claimed use is prohibited by zoning, the property owner must show that it is reasonably probable that the relevant restrictions will be removed in the reasonably near future.").

Fair market value is determined by considering the property's "highest and best use," which is the "highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future." *Olson v. United States*, 292 U.S. 246, 255 (1934); *see also United States v. 1.604 Acres of Land*, 844 F. Supp. 2d 668, 679 (E.D. Va. 2011). "In order for a landowner to claim just compensation based on a proposed use, there must be evidence that the use

is reasonably probable within the reasonably near future—and hence, not a speculative use." *1.604 Acres of Land*, 844 F. Supp. 2d at 679 (citing *Olson*, 292 U.S. at 255–57). To determine the highest and best use, the appraiser must analyze whether the use is (1) physically possible, (2) legally permissible, (3) financially feasible, and (4) maximally productive. *Id.*

Landowner argues that this case is like *MVP v. 1.85 Acres (Lucki)*, Civil Action No. 7:19-cv-00147, 2020 WL 1067001, at *6 (W.D. Va. Mar. 5, 2020), where the court allowed evidence of conceptual subdivision for purposes of highest and best use. In *Lucki*, however, there was evidence that a boundary line adjustment was a reasonable possibility pursuant to a county zoning ordinance. Landowner in this case does not confront the impermissibility of the conceptual subdivision pursuant to county zoning. The property is zoned AG-3, which requires a minimum of 200 feet of frontage on a publicly owned and maintained street. Contrary to this requirement, the conceptual subdivision includes fifteen hypothetical lots that would not have any frontage on a publicly owned or maintained street. It is not reasonably probable that the zoning laws can or will be changed or the boundary lines adjusted to meet the frontage road requirements.

For these reasons, the testimony of Horne and Gruelle on highest and best use will be excluded.

### 3. Linda DeVito

DeVito, a real estate agent, states that the property is "prime for development given its large size, extensive frontage, level topography and cleared fields," but suffers irreparable harm from the pipeline project in terms of marketability. (Dkt. No. 21-4.) In particular, DeVito states that lenders "withhold loans from property adjoining pipeline transmission corridors" and "some couples, often with small children or financial discretion, decline to consider purchasing single-family residential properties" with pipeline easements. (*Id.*)

Devito's report will be excluded because it does not identify the facts and data upon which her opinions are based—that lenders will withhold loans or that individuals have declined to purchase a property with a pipeline or utility. DeVito also does not link unwilling lenders or buyers to a diminution of market value of defendant's parcel. *Lucki*, 2020 WL 1067001, at *6 (excluding interviews with brokers who stated that "many buyers are afraid of a gas pipeline" and "do not want to look at properties with gas pipelines"). The opinion is additionally based on anecdotal conversations relating to various fears or perceptions, without foundation, and, as a result, "are entirely insufficient as a basis for expert testimony." *Id.*

### 4. Larry Florin

Larry Florin, a real estate developer, wrote to the landowner in 2002 suggesting that her property could be developed in a similar manner to Laurel Woods Overlook. (Dkt. No. 21-5.) According to defendant's expert disclosure, Florin will testify that he is no longer interested in developing the subject property due to the pipeline project. (Dkt. No. 21-1.) Florin's testimony will be excluded because it does not state the facts or data upon which the opinion is based and does not link unwilling buyers or developers to a diminution in market value. *See Lucki*, 2020 WL 1067001, at *6. Florin's own unwillingness to purchase the property does not have a measurable market impact.

### C. Motion to Supplement

MVP moved to exclude defendants' expert witnesses on April 8, 2020. (Dkt. No. 20.) Under the court's scheduling order, defendants' response to MVP's motion to exclude was due on April 22, 2020. (Dkt. No. 1 at ¶ 11.) Defendants moved to extend the time to respond, and the court granted the extension, moving the response deadline to May 6. (Dkt. No. 26.) Instead of responding on May 6, defendants moved to reopen discovery on May 7. (Dkt. No. 31.) The court

denied the motion to reopen but granted another extension to respond to the motion to exclude until May 8. (Dkt. No. 32.) Defendants filed a response on that date. (Dkt. No. 33.)

At this point, the trial had been rescheduled from June 2020 until April 2021. (Dkt. No. 24.) On February 18, 2021, the court held a hearing on MVP's motion to exclude experts, motion in limine, and motion for summary judgment. (Dkt. No. 54.) On March 10, 2021, almost a year after MVP filed its motion to exclude, and ten months after defendants' response was due (following two extensions to the time allotted in the scheduling order), defendants moved for leave to file supplemental memoranda in opposition on March 10, 2021. (Dkt. Nos. 61-1, 61-2.) Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule 16(b) is "unlike the more lenient standard of Rule 15(a) in that Rule 16(b) 'does not focus on the bad faith of the movant, or the prejudice to the opposing party,' but focuses on the diligence of the party seeking amendment." *Coleman v. Boeing Co.*, C.A. No. 2:16-CV-1451-DCN-MGB, 2018 WL 10667446, at *2 (D.S.C. Jan. 29, 2018) (quoting *George v. Duke Energy Ret. Cash Balance Plan*, 560 F. Supp. 2d 444, 480 (D.S.C. 2008)). "Good cause" means that "scheduling deadlines cannot be met despite a party's diligent efforts." *Id.*

Defendants have not established good cause for their delay. Defendants' only nod to the good cause standard is to state that the parties "briefed these matters more than a year before oral argument due to the continuance required" by the COVID-19 pandemic and "issues developed more since briefing." (Dkt. No. 61 at ¶ 11.) Despite the delay caused by the pandemic, the scheduling order remains in place, and the good cause standard must be satisfied. Otherwise, litigants would continue filing supplemental briefing while matters have been taken under advisement. Defendants are not allowed to take advantage of the pandemic in this manner, and the continual

supplementation of briefing is disruptive to the court's process in addressing pending motions.

Even if defendants had established good cause for their failure to meet the deadline set forth in the scheduling order, defendants' supplemental briefing would not alter the court's analysis. For example, defendants argue that the issue of highest and best use should be left for the jury to decide. The court has already held that the issue is for the court, not the jury. *MVP v. 1.81 Acres (Jones)*, No. 7:19-cv-00151, 2019 WL 4007924, at *1 (W.D. Va. Aug. 23, 2019) (stating that "this is an issue for the court to decide before submission to the jury to determine just compensation") (citing Fed. R. Civ. P. 71.1(h)).

For these reasons, defendants' motion to supplement will be denied.

**D.  MVP's Motion in Limine: Evidence of Conceptual Subdivision**

For the reasons stated above with respect to the opinions of Gruelle and Horne on the conceptual subdivision, MVP's motion will be granted and evidence of the conceptual plan in this case will be excluded to avoid the risk of an improper award of compensation on a per-lot basis. *Baker*, 2019 WL 4306981, at *5, and because such a use is not legally permissible.

**E.  Motion for Jury View**

While a jury view is not required by law, the court agrees that an in-person jury view is helpful, where practicable, because the jury is to determine the just compensation for the taking. Thus, the court will grant the motion for a jury view subject to the conditions during the trial dates regarding logistics (including, but not limited to, access to the property, weather, and transportation), security (including, but not limited to, the health and safety of the jurors, parties, counsel, and court personnel), and time constraints. Should the court determine that an in-person jury view is not practicable at the time of trial, then the parties will have the opportunity to use photographs, or pre-recorded or live video.

**F. Motion for Trial by Videoconference**

MVP moves for a trial by videoconference, if necessary in this case. The court has returned to holding in-person trials, including a trial in an MVP just compensation matter. The court has no reason, at this time, to think it will be necessary to proceed by videoconference when this matter is scheduled to be tried in 2022. Therefore, the court will deny this motion without prejudice.

### III.  CONCLUSION

For the foregoing reasons, MVP's motion to exclude experts (Dkt. No. 20) is GRANTED; landowner's motion to file supplemental memoranda regarding comparable sales and highest and best use (Dkt. No. 61) is DENIED; MVP's motion in limine (Dkt. No. 22) is GRANTED with respect to evidence of conceptual subdivision; landowner's motion for a jury view (Dkt. No. 64) is GRANTED; and MVP's motion for a trial by videoconference (Dkt. No. 57) is DENIED without prejudice.

The clerk is directed to provide a copy of this opinion and order to all counsel of record.

Entered: September 27, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge